UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17-CR-526-RLW |
| | ) |
| KURT WALLACE, | ) |
| | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

1. **PARTIES**:

The parties are the defendant Kurt Wallace, represented by defense counsel John Stobbs and Daniel Schattnik, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement. However, if the Court accepts the plea agreement as to the sentence or sentencing range, then the Court will be bound by said agreement pursuant to Rule 11(c)(1)(C).

1

2. **GUILTY PLEA**:

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), in exchange for the defendant's voluntary plea of guilty to Counts 2 through 9 of the Amended Second Superseding Indictment (Doc. # 327), the United States agrees to move for the dismissal as to the defendant of Count 1 at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this district relative to defendant's conduct set forth in the Indictment (Doc. # 24); Superseding Indictment (Doc. # 55); Second Superseding Indictment (Doc. # 189); and Amended Second Superseding Indictment (Doc. # 327).

Defendant understands and acknowledges that this agreement is limited to the Eastern District of Missouri, and cannot bind other federal, state, or local prosecuting authorities. Specifically, nothing in this agreement prevents or otherwise prohibits the United States from bringing additional charges and further prosecution relative to defendant's participation in an attempted escape from custody from Saint Clair County, Illinois jail in or around August 2023 or any other charges related to that conduct.

In addition, pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, the parties agree that the defendant's sentence should be 60 years' (720 months') imprisonment. If the Court informs the parties prior to sentencing that it will reject this agreement or sentences defendant to a sentence not in conformity with this agreement, then either party may withdraw from the plea agreement and the defendant will have an opportunity to withdraw his guilty plea pursuant to Rule 11(c)(5). The parties further agree

that neither party shall request a sentence above or below the sentencing agreement in this paragraph pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein.

3.    **CARJACKING IS A CRIME OF VIOLENCE:**

The offense of armed carjacking as charged in the Amended Second Superseding Indictment is a crime of violence as defined in 18 U.S.C. § 924(c)(3)(A) because it has as an element the use, attempted use, or threatened use of physical force against the person or property of another. Additionally, it is also a crime of violence pursuant to 18 U.S.C. § 924(c)(3)(B) because it must involve a substantial risk that force against the person or property of another may be used in the course of the offense. By virtue of this guilty plea agreement, defendant expressly admits and agrees that the commission of the armed carjackings as charged in the Amended Second Superseding Indictment are crimes of violence in that they involved a substantial risk that force against the person or property of another may be, and was actually, used in the course of those offenses. The defendant also admits and agrees that the crime of armed carjacking as charged in the Amended Second Superseding Indictment specifically satisfies the force clause under 18 U.S.C. § 924(c)(3)(A).

4.   **ELEMENTS**:

**Count 2**
**September 16, 2017, Carjacking**

Defendant admits to knowingly violating Title 18, United States Code, Section 2119, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

> One, the defendant, took a 2005 Chevrolet Monte Carlo, VIN 2G1WW12EX59116805, from a person, that is, M.H.;
>
> Two, the defendant did so by means of force and violence or intimidation;
>
> Three, the 2005 Chevrolet Monte Carlo described above had been transported, shipped, or received in interstate commerce;
>
> Four, at the time the defendant took the motor vehicle he intended to cause death or serious bodily injury; and
>
> Five, the defendant caused serious bodily injury to a person, that is, M.H., while taking the 2005 Chevrolet Monte Carlo.

**Count 3**
**Discharge of Firearm in Furtherance of September 16, 2017, Carjacking**

Defendant admits to knowingly violating Title 18, United States Code, Section 924(c), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

> One, the defendant committed the crime of carjacking as charged in Count 2 of the Amended Second Superseding Indictment; and
>
> Two, the defendant knowingly discharged a firearm in furtherance of that crime.

## Count 4
## October 15, 2017, Carjacking

Defendant admits to knowingly violating Title 18, United States Code, Section

2119, and admits there is a factual basis for the plea and further fully understands that the

elements of the crime are:

> One, the defendant, took a 2008 Cadillac CTS, VIN 1G6DS57V880136014, from a person, that is, J.O.;
>
> Two, the defendant did so by means of force and violence or intimidation;
>
> Three, the 2008 Cadillac CTS described above had been transported, shipped, or received in interstate commerce;
>
> Four, at the time the defendant took the motor vehicle he intended to cause death or serious bodily injury; and
>
> Five, the defendant caused serious bodily injury to a person, that is, J.O., while taking the 2008 Cadillac CTS.

## Count 5
## Discharge of Firearm in Furtherance of October 15, 2017, Carjacking

Defendant admits to knowingly violating Title 18, United States Code, Section

924(c), and admits there is a factual basis for the plea and further fully understands that the

elements of the crime are:

> One, the defendant committed the crime of carjacking as charged in Count 4 of the Amended Second Superseding Indictment; and
>
> Two, the defendant knowingly discharged a firearm in furtherance of that crime.

Page **5** of **26**

## Count 6
### October 16, 2017, Carjacking

Defendant admits to knowingly violating Title 18, United States Code, Section 2119, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

> One, the defendant, took a 2017 Jeep Cherokee, VIN 1C4RJFBG3HC891753, from a person, that is, J.G.;
>
> Two, the defendant did so by means of force and violence or intimidation;
>
> Three, the 2017 Jeep Cherokee described above had been transported, shipped, or received in interstate commerce;
>
> Four, at the time the defendant took the motor vehicle he intended to cause death or serious bodily injury; and
>
> Five, the defendant caused serious bodily injury to a person, that is, J.G., while taking the 2017 Jeep Cherokee.

## Count 7
### Discharge of Firearm in Furtherance of October 16, 2017, Carjacking Resulting in Death

Defendant admits to knowingly violating Title 18, United States Code, Section 924(j), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

> One, the defendant committed the crime of carjacking as charged in Count 6 of the Amended Second Superseding Indictment;
>
> Two, the defendant knowingly discharged a firearm in furtherance of that crime;

Three, the defendant used the firearm to cause the death of a person, that is, J.G.; and

Four, the killing of J.G. was murder.

## Count 8
### July 15, 2019, Escape from Custody

Defendant admits to knowingly violating Title 18, United States Code, Section 751, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

One, the defendant was in the custody of the United States Attorney General confined in the Lincoln County, Missouri Detention Center;

Two, the custody was by virtue of an arrest on a charge of a felony crime and order of detention issued in United States District Court for the Eastern District of Missouri Case Number 4:17 CR 526 RLW;

Three, the defendant left custody without authorization; and

Four, in so doing, the defendant knew that he was leaving custody without authorization.

## Count 9
### July 15, 2019, Carjacking

Defendant admits to knowingly violating Title 18, United States Code, Section 2119, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

One, the defendant(s), took a 2011 GMC Acadia, VIN 1GKKRTEDXBJ241254,   from a person, that is, W.A.;

Two, the defendant did so by means of force and violence or intimidation;

Page **7** of **26**

Three, the 2011 GMC Acadia described above had been transported, shipped, or received in interstate commerce; and

Four, at the time the defendant took the motor vehicle he intended to cause death or serious bodily injury.

5.   **FACTS**:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section 1B1.3:

**Count 2**
**September 16, 2017, Carjacking**
**Count 3**
**Discharge of Firearm in Furtherance of September 16, 2017, Carjacking**

On September 16, 2017, co-defendant Jherrica Dixon communicated with victim M.H. Dixon requested victim M.H. to meet her.  The purpose of meeting victim M.H. was to allow defendant to take victim M.H's property.  Wallace possessed a firearm.

Victim M.H. traveled to the area of 325 Walsh Street located within the City of Saint Louis by driving his 2005 Chevrolet Monte Carlo bearing VIN 2G1WW12EX59116805. (This vehicle had been transported through interstate commerce.)   As victim M.H. approached the area, defendant went outside and waited.  Victim M.H. eventually parked his vehicle.

Moments after victim M.H. parked the vehicle defendant approached the driver's side door with the firearm displayed.  Defendant demanded victim M.H. exit the vehicle.

Victim M.H. complied.  Defendant demanded victim M.H. empty his pockets.  Victim M.H. complied, but victim M.H. possessed nothing of value.

At that point, defendant shot victim M.H. in the right shoulder.  Victim M.H. ran from the area.  Defendant got into victim M.H.'s vehicle and drove away.

**Count 4**
**October 15, 2017, Carjacking**
**Count 5**
**Discharge of Firearm in Furtherance of October 15, 2017, Carjacking**

On October 15, 2017, co-defendant Jherrica Dixon communicated victim J.O.  Co-defendant Dixon informed victim J.O. that her vehicle had run out of gas in the area of 5878 Kennerly.  Co-defendant Dixon requested victim J.O. to meet her to help her.  The real purpose for co-defendant Dixon's communication with victim J.O. was for defendant to take victim J.O.'s property.  Defendant possessed a semi-automatic handgun.

Victim J.O. traveled to the area of 5878 Kennerly located within the City of Saint Louis by driving his 2008 Cadillac CTS bearing VIN 1G6DS57V880136014. (This vehicle had been transported through interstate commerce.)  Victim J.O. stopped his vehicle behind co-defendant Jherrica Dixon's vehicle that had been parked on the street.

Once parked, defendant shot at victim J.O.'s vehicle.  Defendant then approached victim J.O.'s vehicle with a semi-automatic weapon.  Among other things, defendant ordered victim J.O. out of the vehicle and to empty his pockets.  Victim J.O. complied.  Defendant ordered victim J.O. to leave his mobile phone and vehicle and depart the area.

Victim J.O. complied.  Defendant shot victim J.O. in the right leg Defendant entered victim J.O.'s vehicle and left the area.

### Count 6
### October 16, 2017, Carjacking
### Count 7
### Discharge of Firearm in Furtherance of October 16, 2017, Carjacking Resulting in Death

On October 16, 2017, co-defendant Jherrica Dixon communicated with victim J.G. Defendant, co-defendant Floyd Barber and co-defendant Jherrica Dixon were present inside co-defendant Jherrica Dixon's residence at the time the communications occurred. It was understood and agreed upon by defendant, co-defendant Floyd Barber and co-defendant Jherrica Dixon that, when victim J.G. arrived, he would be robbed of his property.  Defendant was armed with a semi-automatic handgun prior to victim J.G.'s arrival.

Victim J.G. travelled to the area of 325 Walsh located within the City of Saint Louis by driving a 2017 Jeep Grand Cherokee bearing VIN 1C4RJFBG3HC891753.  (This vehicle had been transported through interstate commerce.)  At or near the time of victim J.G.'s arrival in the area, defendant and co-defendant Floyd Barber went outside with the intent to confront victim J.G.  A confrontation occurred.  During the course of defendant and co-defendant Floyd Barber confronting victim J.G., defendant shot victim J.G.  Victim J.G. fled from the scene on foot.

As victim J.G. fled, defendant and co-defendant Floyd Barber entered victim J.G.'s vehicle and fled from the scene.  Victim J.G. was located by police and medical personnel

Page **10** of **26**

in the area of 5101 Minnesota. Victim J.G. was transported to the hospital and later pronounced dead.

### Count 8
### July 15, 2019, Escape from Custody
### Count 9
### July 15, 2019, Carjacking

On or about November 9, 2017, a criminal complaint was issued against defendant in United States District Court for the Eastern District of Missouri Case Number 4:17-MJ-314-DDN (Doc. # 1). On or about November 15, 2017, a federal indictment was returned against defendant in United States District Court for the Eastern District of Missouri Case Number 4:17-CR-526-RLW (Doc. # 24). Defendant was ordered detained on or about November 20, 2017, and was remanded to the custody of the United States Attorney General.

In that regard, defendant was eventually placed in the custody of the Lincoln County Detention Center located in Lincoln County, Missouri, which is within the federal jurisdiction of the Eastern District of Missouri. On July 15, 2019, defendant and inmate James Flannel escaped from the Lincoln County Detention Center be means of damaging and climbing through a window. Once outside the detention center, defendant and inmate James Flannel fled on foot.

While escaping on foot and among other things, defendant and inmate James Flannel were actively looking for a means of transportation following escape from the detention center. Defendant and inmate James Flannel eventually encountered victim

W.A. who was operating a 2011 GMC Acadia motor vehicle bearing VIN 1GKKRTEDXBJ241254 within the Eastern District of Missouri. (This vehicle had been transported through interstate commerce.)

Defendant and inmate James Flannel approached victim W.A., with defendant and inmate James Flannel on each side of the vehicle. By their words and actions, among other things, defendant and inmate James Flannel intimidated victim W.A. and intended to cause serious bodily injury, if necessary, in order to take possession of victim W.A.'s motor vehicle. Defendant and inmate James Flannel were able to take possession of victim W.A.'s vehicle as a direct result of their words and actions and fled the scene in that vehicle.

Defendant and inmate James Flannel were eventually apprehended by law enforcement after a vehicle pursuit during which defendant created a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement officers in the vehicle.

*     *     *

By virtue of this plea agreement, defendant acknowledges and admits that, among other things, he intentionally took property and certain motor vehicles by means of force, violence or intimidation. In relation to Counts 2 and 3 and victim M.H., the intent to cause death or serious bodily harm was apparent by the possession, display, and discharge of one or more firearms. In relation to Counts 4 and 5 and victim J.O., the intent to cause death or serious bodily harm was apparent by the possession, display, and discharge of one or more firearms. In relation to Counts 6 and 7 and victim J.G., a firearm was brandished,

Page **12** of **26**

discharged and resulted in death.  In relation to Count 9 and victim W.A., the intent to cause death or serious bodily harm was apparent by the words and actions taken by defendant and defendant's accessibility to objects, including but not limited to rocks and/or his hands, that were capable of inflicting deadly force.

6.    **STATUTORY PENALTIES**:

**Count 2**
**September 16, 2017, Carjacking**

Defendant fully understands that the maximum possible penalty provided by law for the crimes to which the Defendant is pleading guilty is imprisonment of not more than 15 years; a fine of not more than $250,000; or both such imprisonment and fine.  The Court also may impose a period of supervised release of not more than three years.

**Count 3**
**Discharge of Firearm in Furtherance of September 16, 2017, Carjacking**

Defendant fully understands that the maximum possible penalty provided by law for each of the crimes to which the Defendant is pleading guilty is imprisonment of not less than 10 years, but not more than life, consecutive to any other sentence imposed; a fine of not more than $250,000; or both such imprisonment and fine.  The Court also may impose a period of supervised release of not more than five years.

Defendant fully understands that the crime to which a guilty plea is being entered under Count 3 requires a mandatory minimum term of imprisonment of 10 years consecutive to any other sentence imposed.

### Count 4
### October 15, 2017, Carjacking

Defendant fully understands that the maximum possible penalty provided by law for the crimes to which the Defendant is pleading guilty is imprisonment of not more than 25 years; a fine of not more than $250,000; or both such imprisonment and fine.  The Court also may impose a period of supervised release of not more than three years.

### Count 5
### Discharge of Firearm in Furtherance of October 15, 2017, Carjacking

Defendant fully understands that the maximum possible penalty provided by law for each of the crimes to which the Defendant is pleading guilty is imprisonment of not less than 10 years, but not more than life, consecutive to any other sentence imposed; a fine of not more than $250,000; or both such imprisonment and fine.  The Court also may impose a period of supervised release of not more than five years.

Defendant fully understands that the crime to which a guilty plea is being entered under Count 5 requires a mandatory minimum term of imprisonment of 10 years consecutive to any other sentence imposed.

### Count 6
### October 16, 2017, Carjacking

Defendant fully understands that the maximum possible penalty provided by law for the crimes to which the Defendant is pleading guilty is imprisonment of not more than life; a fine of not more than $250,000; or both such imprisonment and fine.  The Court also may impose a period of supervised release of not more than three years.

## Count 7
## Discharge of Firearm in Furtherance of October 16, 2017, Carjacking
## Resulting in Death

Defendant fully understands that the maximum possible penalty provided by law for each of the crimes to which the Defendant is pleading guilty is imprisonment of not less than 10 years, but not more than life, consecutive to any other sentence imposed; a fine of not more than $250,000; or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than five years.

Defendant fully understands that the crime to which a guilty plea is being entered under Count 7 requires a mandatory minimum term of imprisonment of 10 years consecutive to any other sentence imposed.

## Count 8
## July 15, 2019, Escape from Custody

Defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than five years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years.

## Count 9
## July 15, 2019, Carjacking

Defendant fully understands that the maximum possible penalty provided by law for the crimes to which the Defendant is pleading guilty is imprisonment of not more than 25 years; a fine of not more than $250,000; or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.

7.    **U. S. SENTENCING GUIDELINES (2021 MANUAL):**

The defendant understands that this offense is affected by the U. S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  To assist the Court in determining the impact of the plea agreement, the parties submit the following U.S. Sentencing Guidelines analysis:

a.    **Chapter 2 Offense Conduct**:

### Count 2
### September 16, 2017, Carjacking

(1)  **Base Offense Level**:  The parties agree that the base offense level is 20 as found in Section 2B3.1(a).

(2)  **Specific Offense Characteristics**:  The parties agree that the following Specific Offense Characteristics apply: (a) as the offense involved a carjacking, two levels are added pursuant to Section 2B3.1(b)(5).

(3) **Chapter 3 Adjustments**:  The parties recommend that two levels should be deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility.

### Count 3
### Discharge of Firearm in Furtherance of September 16, 2017, Carjacking

(1)  **Base Offense Level**:  The parties agree that the Base Offense Level is found in Section 2K2.4(b) resulting in a guideline sentence of the term of imprisonment required by statute which, in this case, is a sentence of imprisonment not less than 10 years and not more than life consecutive to any other sentence imposed with no probation.

Page **16** of **26**

(2) **Specific Offense Characteristics**: The parties do not anticipate that any Specific Offense Characteristics apply.

(3) **Chapter 3 and 4 Adjustments**: Pursuant to Section 2K2.4(b) and Application Note 5, Chapters Three and Four do not apply. Therefore, as to these counts, defendant is not entitled to an acceptance of responsibility reduction under Section 3E1.1.

**Count 4**
**October 15, 2017, Carjacking**

(1) **Base Offense Level**: The parties agree that the base offense level is 20 as found in Section 2B3.1(a).

(2) **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply: (a) as the offense involved a carjacking, two levels are added pursuant to Section 2B3.1(b)(5).

(3) **Chapter 3 Adjustments**: The parties recommend that two levels should be deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility.

**Count 5**
**Discharge of Firearm in Furtherance of October 15, 2017, Carjacking**

(1) **Base Offense Level**: The parties agree that the Base Offense Level is found in Section 2K2.4(b) resulting in a guideline sentence of the term of imprisonment required by statute which, in this case, is a sentence of imprisonment not less than 10 years and not more than life consecutive to any other sentence imposed with no probation.

(2) **Specific Offense Characteristics**: The parties do not anticipate that any Specific Offense Characteristics apply.

(3) **Chapter 3 and 4 Adjustments**: Pursuant to Section 2K2.4(b) and Application Note 5, Chapters Three and Four do not apply. Therefore, as to these counts, defendant is not entitled to an acceptance of responsibility reduction under Section 3E1.1.

**Count 6**
**October 16, 2017, Carjacking**

(1) **Base Offense Level**: The parties agree that the base offense level is 43 as found in Sections 2B3.1 and 2A1.1.

(2) **Specific Offense Characteristics**: The parties do not anticipate that any Specific Offense Characteristics apply.

(3) **Chapter 3 Adjustments**: The parties recommend that two levels should be deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility.

**Count 7**
**Discharge of Firearm in Furtherance of October 16, 2017, Carjacking**
**Resulting in Death**

(1) **Base Offense Level**: The parties agree that the base offense level is 43 as found in Sections 2A1.1.

(2) **Specific Offense Characteristics**: The parties do not anticipate that any Specific Offense Characteristics apply.

(3)  **Chapter 3 and 4 Adjustments**:  Pursuant to Section 2K2.4(b) and Application Note 5, Chapters Three and Four do not apply.  Therefore, as to these counts, defendant is not entitled to an acceptance of responsibility reduction under Section 3E1.1.

### Count 8
### July 15, 2019, Escape from Custody

(1)  **Base Offense Level**:  The parties agree that the base offense level is 13 as found in Section 2P1.1(a)(1).

(2)  **Specific Offense Characteristics**:  The parties do not anticipate that any Specific Offense Characteristics apply.

(3)  **Chapter 3 Adjustments**:  The parties recommend that two levels should be deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility.

### Count 9
### July 15, 2019, Carjacking

(1)  **Base Offense Level**:  The parties agree that the base offense level is 20 as found in Section 2B3.1(a).

(2)  **Specific Offense Characteristics**:  The parties agree that the following Specific Offense Characteristics apply: as the offense involved a carjacking, two levels are added pursuant to Section 2B3.1(b)(5).

(3)  **Chapter 3 Adjustments**:  (a) The parties recommend that two levels should be .deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility; (b) as defendant recklessly created a substantial

risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, two levels are added pursuant to Section 3C1.2.

      b.   **Estimated Total Offense Level**:  After appropriate grouping of the various counts under the sentencing guidelines, the parties estimate that the Total Offense Level is 43 with a guideline imprisonment range of life.

      c.   **Criminal History**:  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is available in the Pretrial Services Report.

      d.   **Effect of Parties' U.S. Sentencing Guidelines Analysis**:

The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.  But, if the Court accepts the plea agreement in this case, it is bound by the sentencing agreement in paragraph 2 above.

8.   **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**:

      a.   **Appeal**:  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues**:  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

(2) **Sentencing Issues**:  In the event the Court accepts the plea and, in sentencing the defendant follows the sentencing agreement in paragraph 2, then, as part of this agreement, the parties hereby waive all rights to appeal all sentencing issues.

b.  **Habeas Corpus**: The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

c.  **Right to Records**: The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

9.  **OTHER:**

a.  **Disclosures Required by the United States Probation Office**:  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

b.  **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies**:  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

c.  **Supervised Release**:  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

d.  **Mandatory Special Assessment**:  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $800, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e.  **Possibility of Detention:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f.  **Fines, Restitution and Costs of Incarceration and Supervision**:  The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs

Page **22** of **26**

of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

        g.    **Forfeiture**: The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

10.    **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS**:

        In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions,

Page **23** of **26**

including motions to suppress evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the entire case against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is

Page **24** of **26**

presumed mandatory.   Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

11.   **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case.  In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges that the defendant has voluntarily entered into both the plea agreement and the guilty plea.  The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

12.   **CONSEQUENCES OF POST-PLEA MISCONDUCT**:

After pleading guilty and before sentencing, if defendant commits any crimes, violates any conditions of release, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States will be released from its obligations under this agreement.  The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

13.    **NO RIGHT TO WITHDRAW GUILTY PLEA**:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring or as set forth in Paragraph 2 above.


Sept 12, 2023
_____
Date

THOMAS REA
MOHSEN PASHA
Assistant United States Attorneys


9.13.2023
_____
Date

KURT WALLACE
Defendant


9-13-23
_____
Date

JOHN D. STOBBS II
DANIEL SCHATTNIK
Attorneys for Defendant Kurt Wallace